IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

In re:                                                          )
                                                                )
    STEVEN MATTHEW SUESS and            )
    SANDRA LEE SUESS                           )      Case No. 07-21897
                                                                )
                          Debtors.                       )

MEMORANDUM OPINION

       This matter is before the Court on the motion of the Chapter 13 Trustee to deny confirmation of the Debtors' Chapter 13 plan. The trustee has objected to the plan on the ground that it fails to comply with the disposable income commitment requirement of § 1325(b) in that the Debtors, in arriving at their disposable income to be committed to unsecured creditors under the plan, propose to deduct from their income, payments on indebtedness secured by real estate which they propose to surrender. This is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2)(L) over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a) and (b)(1). The following constitutes my Findings of Facts and Conclusions of Law in accordance with Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, the Court sustains the trustee's objections to confirmation. Specifically, the Court holds that, in arriving at disposable income to be committed to unsecured creditors in the plan, debtors who propose to surrender property pursuant to their plan may not deduct payments on debts secured by such property pursuant to § 707(b)(2)(A)(iii), incorporated into Chapter 13 by § 1325(b)(3).

### I. FACTUAL AND PROCEDURAL BACKGROUND

       Debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code on November 30, 2007, listing an address at 7706 Loesch Road in Jefferson City, Missouri. According to the

Statement of Financial Affairs and the Schedules of Assets and Liabilities, at the time of the filing, the Debtors still owned real estate located at 10131 Earnshaw in Lenexa, Kansas ("Kansas Property"), which they, however, had not occupied since sometime in the year 2006. The Debtors filed a Schedule I, Current Income of Individual Debtors, reflecting combined average net monthly income of $6,792.56 and a Schedule J, Current Expenditures of Individual Debtors, reflecting average monthly expenses of $5,635.00 for monthly net income of $1,157.56. Included among the expenses was a rent or home mortgage payment in the amount of $903.00. The Debtors' initial Chapter 13 plan filed on November 30, 2007, and each amended plan filed thereafter, has proposed to surrender the Kansas Property. On January 18, 2008, this Court entered an order granting a motion for relief from automatic stay with respect to the Kansas Property.

On February 12, 2008, Debtors filed Amended Schedules I and J showing combined average monthly income of $7,165.56 and separate Schedules J, acknowledging their separation and separate living arrangements, stating combined average monthly expenses of $6,365.00, for a monthly net income of $800.56. One schedule continued to show the $903.00 rent or home mortgage payment, the other a rent or home mortgage payment of $400.00. Debtors filed an amended Form 22C, Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income, reflecting a current monthly income of $11,385.00. Their annualized current monthly income of $136,620.00 exceeds $63,275.00, the applicable median family income in the state of Missouri for a household of their size. The Form 22C showed expenses of $12,318.57 including a deduction on line 47c for $2,830.00 mortgage payment to Option One Mortgage Company on the Kansas Property. The monthly disposable income calculated on the Form 22C as shown on line 58 was a negative $933.57.

An amended Chapter 13 plan filed on the same date proposes to make payments to the trustee of the sum of $800.00 per month for 36 months. The Debtors propose to surrender the Kansas Property. Unsecured creditors are to receive whatever is left over after the payment of priority and secured claims. The trustee filed a motion to deny confirmation objecting on the grounds that the Debtors have not committed all their projected disposable income to the payment of unsecured creditors under the plan because they have improperly deducted from their current monthly income the $2,830.00 house payment for the Kansas Property which they propose to surrender under the plan and which payment they will not, therefore, make.

## II. DISCUSSION AND ANALYSIS

As amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), upon objection, debtors must demonstrate either that they propose to pay their unsecured creditors in full or that they have committed all their projected disposable income to the payment of unsecured creditors under the plan for the applicable commitment period. The trustee's objection invokes this provision. While projected disposable income is not defined, BAPCPA does contain a new definition of the phrase "disposable income." In § 1325(b)(2), the phrase is defined as current monthly income received by the debtor (excluding certain designated sources) less amounts reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. § 1325(b)(2)(A). This case implicates not "current monthly income" which itself is a defined term, but the meaning of "amounts reasonably necessary to be expended" in the context of an above-median debtor. The Code now specifies that for debtors above the applicable state median level of income, those expenses shall be determined in accordance with § 707(b)(2). § 1325(b)(3). That paragraph of § 707(b) contains the core of the newly adopted

3

means test and specifies the deductions that may be taken from current monthly income for the above-median Chapter 13 debtor to arrive at disposable income. Among other things, according to § 707(b)(2)(A)(iii), a debtor may deduct "the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition" divided by 60. Since this provision is part of the means test in Chapter 7 and incorporated into the disposable income calculation for above-median Chapter 13 debtors by § 1325(b)(3), its meaning has been subject to interpretation in both contexts. The purpose of the means test in Chapter 7 is to determine whether the debtors have excess income which might be used to make payments to unsecured creditors under a Chapter 13 plan. One of the available deductions is thus the amount of required payments on secured debt. In determining whether a case constitutes an abuse, courts have considered the question of whether a Chapter 7 debtor who has indicated in the Statement of Intention a plan to surrender particular property, or as to which an order granting a motion for relief has been sustained, may nonetheless deduct payments on debts secured by such property. While the cases are split, the vast majority of the courts to consider the question has concluded that the

deduction is nonetheless appropriate.[1]  One of the judges of this district, in *In re Burden*, 380 B.R. 194 (Bankr. W.D. Mo. 2007), has recently adopted the minority view and held that a debtor announcing the intention to surrender property may not take the secured debt deduction.  For the sake of uniformity within this district and also because it agrees with the analysis in *Burden*, particularly the Court's analysis and interpretation of the subclauses of § 707(b)(2)(A)(iii), this Court has determined to follow the holding in *Burden*.

Even were the Court inclined to permit a secured debt deduction on surrender in a Chapter 7 context, separate consideration of the propriety of allowing the deduction in making the disposable income determination in the Chapter 13 context would be warranted.  This Court believes that a more compelling case for disallowing the deduction in Chapter 13 can be made, which may explain the fact that the majority of courts to consider the applicability of the secured debt deduction despite

---

[1] *See, e.g.*, *In re Simmons*, 357 B.R. 480 (Bankr. N.D. Ohio 2006) (debtor may claim a housing allowance for real property which he intends to surrender); *In re Nockerts*, 357 B.R. 497 (Bankr. E.D. Wis. 2006) (same); *In re Randle*, 358 B.R. 360 (Bankr. N.D. Ill. 2006) (same); *In re Zak*, 361 B.R. 481 (Bankr. N.D. Ohio 2007) (same; despite pre-petition foreclosure and post-petition relief from stay); *In re Mundy*, 363 B.R. 407 (Bankr. M.D. Pa. 2007) (same); *In re Graham*, 363 B.R. 844 (Bankr. S.D. Ohio 2007) (same); *In re Longo*, 364 B.R. 161 (Bankr. D. Conn. 2007) (same); *In re Galyon*, 366 B.R. 165 (Bankr. W.D. Okla. 2007) (same); *In re Wilkins*, 370 B.R. 815 (Bankr. C.D. Cal. 2007); *In re Ellringer*, 370 B.R. 905 (Bankr. D. Minn. 2007) (same); *In re Kelvie*, 372 B.R. 56 (Bankr. D. Idaho 2007) (same); *In re Maya*, 374 B.R. 750 (Bankr. S.D. Cal. 2007) (same); *In re Hayes*, 376 B.R. 55 (Bankr. D. Mass. 2007) (same); *In re Chang*, 2007 WL 3034679 (Bankr. N.D. Cal.) (same); *In re Makres*, 380 B.R. 30 (Bankr. N.D. Okla. 2007) (same); *In re Walker*, 2006 WL 1314125 (Bankr. N.D. Ga.) (debtor may take a deduction for debt payments on a vehicle he intends to surrender); *In re Fowler*, 349 B.R. 414 (Bankr. D. Del. 2006) (same); *In re Hartwick*, 352 B.R. 867 (Bankr. E.D. Minn. 2006), *aff'd*, 373 B.R. 645 (D. Minn. 2007) (same); *In re Sorrell*, 359 B.R. 167 (Bankr. S.D. Ohio 2007) (same); *In re Kogler*, 368 B.R. 785 (Bankr. W.D. Wis. 2007) (same); *In re Palm*, 2007 WL 1772174 (Bankr. D. Kan.) (cure payments pursuant to § 707(b)(2)(A)(iii)(II), however, may only be deducted if debtor intends to keep the collateral and make the cure payments); *In re Benedetti*, 372 B.R. 90 (Bankr. S.D. Fla. 2007); *In re Osborne*, 374 B.R. 68 (Bankr. W.D.N.Y. 2007); *In re Lindstrom*, ___ B.R. ___, 2007 WL 4790790 (Bankr. D. Colo.); *In re Parada*, 2008 WL 126626 (Bankr. S.D. Fla.); *contra, In re Skaggs*, 349 B.R. 594 (Bankr. E.D. Mo. 2006); *In re Harris*, 353 B.R. 304 (Bankr. E.D. Okla. 2006); *In re Ray*, 362 B.R. 680 (Bankr. D.S.C. 2007); *In re Masur*, 2007 WL 3231725 (Bankr. D.S.D.); *In re Burden*, 380 B.R. 194 (Bankr. W.D. Mo. 2007); *In re Naut*, 2008 WL 191297 (Bankr. E.D. Pa.).

surrender of property in this context has held it improper.[2]  Courts have also disallowed the deduction in analogous contexts such as when the debtor proposes to restructure the debt pursuant to the plan or to avoid the lien and to pay the associated debt if at all, as unsecured debt.[3]

The rationale of those courts permitting the deduction by the Chapter 7 debtor who indicates an intention to surrender the property has been that despite the surrender of the property, the payments to the secured creditor remain contractually due and that the determination of eligibility for Chapter 7 relief should be made as of the date of the filing of the petition without consideration of subsequent events.  Finally, some of these courts have also suggested that allowance of the deduction is inconsistent with a perceived Congressional policy that objective data and mechanical formulas govern the outcome, eliminating the exercise of discretion by bankruptcy courts in determining reasonable and necessary expenses allowed to Chapter 7 debtors.

However, different considerations of policy and statutory construction mandate a different result in Chapter 13 cases.  Although in Chapter 7, it may be appropriate to apply the means test as of the date of the filing of the petition, § 1325(b)(1) specifically states that upon objection, the Court is to make the determination whether the debtor is committing all projected disposable income "as of the effective date of the plan."  This has been construed to mean as of the date of confirmation

---

[2] *See In re Spurgeon*, 378 B.R. 197 (Bankr. E.D. Tenn. 2007) (debtor may not deduct an amount for payment on secured debt on real property which has been surrendered or which is intended to be surrendered pursuant to the plan); *see also, e.g., In re Love*, 350 B.R. 611 (Bankr. M.D. Ala. 2006) (debtor may not deduct an amount for payments on secured debt on a vehicle which he intends to surrender pursuant to the plan); *In re Crittendon*, 2006 WL 2547102 (Bankr. M.D.N.C.) (same); *In re Coleman*, ___ B.R. ___, 2008 WL 542365 (Bankr. W.D. Ark.) (same); *In re Kalata*, 2008 WL 552856 (Bankr. E.D. Wis.) (same); *In re Smith*, ___ B.R. ___, 2008 WL 613177 (Bankr. E.D. Wis.) (same); *contra In re Oliver*, 2006 WL 2086691 (Bankr. D. Or.) (debtor may deduct an amount for payment on secured debt which has been surrendered or which is intended to be surrendered pursuant to the plan); *In re Anderson*, 2008 WL 748416 (Bankr. S.D. Ohio) (same); *In re Reis*, 2007 WL 2746794 (Bankr. D.N.H.) (same); *In re Burmeister*, 378 B.R. 227 (Bankr. N.D. Ill. 2007) (same).

[3] *In re McPherson*, 350 B.R. 38 (Bankr. W.D. Va. 2006) (debt to be restructured pursuant to the plan); *In re Sackett*, 374 B.R. 70 (Bankr. W.D.N.Y. 2007) (lien to be avoided).

of the proposed plan. In *In re Crittendon*, 2006 WL 2547102 (Bankr. M.D.N.C.), the court considered this issue and observed:

> The "as of the effective date of the plan" language as used in section 1325(b)(1) is followed by both subparagraph (A) and subparagraph (B) of section 1325(b)(1). Given this arrangement of the statutory language, the plain meaning of the statute is that both subparagraph (A) and subparagraph (B) are modified by the "as of the effective date of the plan" language in section 1325(b)(1) and such language therefore is applicable to both subparagraphs. This means that the determination called for under section 1325(b)(2)(B) depends upon whether *as of the effective date of the plan* the plan commits all of the debtor's projected disposable income to make payments to unsecured creditors. In order to make this determination, the court must determine the "disposable income" of the debtor as of the effective date of the plan which generally is regarded as the date of confirmation.

*Crittendon*, 2006 WL 2547102 at *3 (emphasis added); *see also In re Sackett*, 374 B.R. 70 (Bankr. W.D.N.Y. 2007) ("unlike in Chapter 7 where the critical date for the Chapter 7 Means Test is the date of the petition, § 1325(b)(1)(B) specifically provides that any Means Test objection in Chapter 13 is determined as of the effective date of the Plan"); *In re Spurgeon*, 378 B.R. 197 (Bankr. E.D. Tenn. 2007); *In re Smith*, ___ B.R. ___, 2008 WL 613177 (Bankr. E.D. Wis.); *In re Vernon*, ___ B.R. ___, 2008 WL 859239 (Bankr. M.D. Fla.) ("disposable income shall be determined by applying 11 U.S.C. §§ 707(b)(2)(A) and (B) according to the pertinent circumstances existing on the date of the confirmation hearing"). A debtor whose plan proposes to surrender property subject to a security interest will not therefore make payments on the associated debt during the course of

the plan. Viewed from the vantage point of the date of confirmation of such a plan, amounts necessary to make payments on such debt should be regarded as part of the debtor's disposable income and not deducted in order to arrive at the required payment to unsecured creditors under the plan.

Even if the temporal focus of the determination the Court has to make were not different in a Chapter 13 case, the result the Court reaches is supported by the different meaning of the phrase "contractually due" in the context of confirmation of a Chapter 13 plan. In a Chapter 7 case, the amount scheduled as due under the contract may technically remain due despite relief from the automatic stay or surrender of the collateral or even the entry of an order of discharge. In a Chapter 13 case, however, the debtor's plan modifies the arrangement between the debtor and the creditor. It creates a new contract with new provisions for payment of the claim. If the plan proposes a surrender of the collateral, no payments are scheduled to be made under the plan to the creditor. For that reason, no further amounts are contractually due and the secured debt deduction is inappropriate. In the case of *In re McPherson*, 350 B.R. 38 (Bankr. W.D. Va.2006), the court considered the situation in the context of the debtor's proposed restructure of the secured debt pursuant to the plan and concluded:

> The term "contractually due", however, does not carry the same meaning in a Chapter 13 case as in a Chapter 7 case. The Chapter 13 plan constitutes a new agreement between the debtor and each secured creditor. A debtor's obligations under the plan are substituted for his or her obligations under the original contract with each secured creditor.

*McPherson*, 350 B.R. at 46; *see also In re Edmunds*, 350 B.R. 636 (Bankr. D.S.C. 2006); *Spurgeon*,

378 B.R. at 201 ("confirmation of the plan will change the facts relevant to the deduction. The amounts that would otherwise be due under the contract after the debtor filed the Chapter 13 case will not be scheduled as contractually due to a secured creditor. They will not be within the terms of the deduction statute."); *In re Coleman*, 382 B.R. 759 (Bankr. W.D. Ark. 2008); *Smith*, 2008 WL 613177 at *8. Consequently, if the debtor proposes to surrender secured property rather than retain it and pay the associated debt, the new arrangement embodied in the confirmed plan constitutes a new contract between the debtor and the secured creditor pursuant to which no additional payments will be contractually due. A debtor confirming such a plan is not entitled to deduct any payments on account of such secured debt in arriving at the amount of disposable income to be paid to unsecured creditors pursuant to the plan. In a virtually identical factual situation, the court in *Smith* concluded:

> Debtors' Chapter 13 plan clearly states how the debtors plan to treat their mortgage creditors. The plan states that they will surrender the collateral. The plan does not make any provision for the debtors to make the mortgage payments. Indeed, on February 14, 2008, the court granted one of the mortgage creditors relief from the stay. It appears that, even absent confirmation of the debtors' plan, there is now a new contractual arrangement between the debtors and the mortgage creditors, and there are no payments "scheduled as contractually due" under that contractual arrangement. Accordingly, because there are no mortgage payments "scheduled as contractually due" under the new arrangement, the debtors cannot deduct those mortgage payments from their current monthly income in the disposable income calculations.

*Smith*, 2008 WL 613177 at *11. Other courts have likewise denied a secured debt deduction on property to be surrendered, employing different reasoning. *See*, *e.g.*, *In re Renicker*, 342 B.R. 304 (Bankr. W.D. Mo. 2006) ("above-median-income debtors could not use historic mortgage expense for homes they no longer owned to reduce their monthly income"); *In re Love*, 350 B.R. 611 (Bankr. M.D. Ala.. 2006); *In re McGillis*, 370 B.R. 720 (Bankr. W.D. Mich. 2007); *In re Kalata*, 2008 WL 552856 (Bankr. E.D. Wis.).

This result does not contravene the Congressional policy of restricting the discretion to be exercised by bankruptcy courts in this process. No judicial discretion is being exercised when all the court needs to do is to confirm from reviewing the Chapter 13 plan that a payment proposed to be deducted is not scheduled to be made by the debtors during the course of the plan. The court is not making a determination of the necessity or reasonableness of the involved expense but merely confirming that the Debtors do not propose to make it and it, therefore, will not be scheduled as contractually due during each of the 60 months following the date of the filing of the petition.

For all these reasons, the Court holds that the Debtors may not deduct, in calculating their disposable income, a secured debt payment on the real property which they propose to surrender pursuant to the plan. The Court, therefore, grants the trustee's motion to deny confirmation.

DATED:   April 28, 2008             /s/ Dennis R. Dow
                                    HONORABLE DENNIS R. DOW
                                    UNITED STATES BANKRUPTCY JUDGE

Copies to:
Rick Fink
Noel Bisges